# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| LARRY HORTON, | * | |
| Plaintiff | * | |
| v | * | Civil Action No. PX-18-2031 |
| WEXFORD HEALTH SOURCES, INC., DR. ASRESAHEGN GETACHEW, M.D., RICHARD GRAHAM, | * * | |
| Defendants | * | |

***

## **MEMORANDUM OPINION**

Plaintiff Larry Horton brings this civil rights action, alleging that substandard medical care has subjected him to cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution. ECF No. 1-2. Horton, an inmate at Western Correctional Institution in Cumberland, Maryland, initially filed this Complaint in the District Court for Allegany County, Maryland, alleging that Defendants' wrongful failure to renew his pain medications, Ultram and Neurontin, amounted to medical malpractice, "cruel and unusual punishment," and deliberate indifference to his medical needs. ECF No. 1-2 at 1, 6, 8, 13, 14. As relief, Horton requests renewal of his Ultram and Neurontin prescriptions, monetary damages, and for Defendant, Dr. Asresahegn Getachew, to receive education on the dangers of failing to renew Ultram. ECF No. 1-2 at 1, 8, 10.

Defendants Wexford Health Sources, Inc. and Dr. Getachew, M.D. (collectively the Medical Defendants) with the consent of Defendant Warden Richard Graham, removed the case to this Court. ECF No. 1, ECF No. 1-3. The Medical Defendants have filed a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment. ECF No. 6. Horton opposed the motion. ECF No. 8. Warden Graham filed a separate Motion to Dismiss, or in the Alternative, Motion for

Summary Judgment. ECF No. 15. Horton was provided an opportunity to respond to Graham's dispositive motion, but he has not done so. ECF No. 16.[2]

In his Opposition to the Medical Defendants' Motion, Horton contends that he had no intention to raise a civil-rights claim and that he instead wishes to bring only common law tort claims against the Defendants. Horton seeks remand to Alleghany County District Court. ECF No. 8 at 1-3. The Complaint, however, clearly asserts the very allegations that he now disavows. ECF No. 1-2 at 8, 10, 13, 14. Accordingly, the Court will address the merits of the constitutional claims. The issues have been briefed and the Court now rules because a hearing is not necessary. Local Rule 105.6 (2018). For the reasons that follow, the Court grants summary judgment in Defendants' favor on the constitutional claims, and remands the state common law claims.

**I.      Background**

Horton includes in the Complaint copies of three Administrative Remedy Procedure (ARP) requests that set out the following series of events. October 30, 2017, Plaintiff complained that he had not received his evening dose of Ultram for three weeks. ECF No. 1-2 at 4 (ARP #WCI-274317). The institution responded that Horton's request was "meritorious" and that he was to receive "Ultram 50 mg at bedtime." But by the time the formulary responded to the medical request for this prescription, Horton was only approved by the medical staff "for a tapering dose." The response concluded with informing Horton that his sick call slips have been received at he will be monitored through the sick call process. ECF No. 1-2 at 4.

According to the next ARP dated January 14, 2018, Horton complained that Terri Davis, a Wexford employee, changed the renewal date for his Ultram prescription without his knowledge.

---

[2] The Court also grants Assistant Attorney General James S. Pasko's Motions to Withdraw his Appearance and to Withdraw the Motion for an Extension of Time to Respond to the Complaint. ECF Nos. 13, 14.

ECF No. 1-2 at 6. This change, Horton asserts, amounts to cruel and unusual punishment. ECF No. 1-2 at 6, 8. No response is evident on the documents in the record.

On February 1, 2018, Horton complained in the third ARP that his Ultram was stopped on January 8, 2018 because Terri Davis changed the prescription expiration date without his knowledge. ECF No. 1-2 at 9-10 (ARP# WCI-0273-18). Horton noted that Ultram is the only medication that relieves his chronic pain in his back and from his arthritis, and that he has been on the medication "for years." ECF No. 1-2 at 10. Horton also related that when the Ultram was tapered, he went through withdrawal, his pain worsened, and he had a seizure. ECF No. 1-2 at 10. The Court did not receive any response to this ARP.

Horton suffers from peripheral neuropathy, chronic back pain, anxiety disorder, and combined drug dependencies. Getachew Decl. ECF No. 6-5 ¶ 4-5. He has complained for many years of lower back pain which radiates down his legs to his feet, arising from an injury sustained while he was in the military. He has, in the past, received Neurontin and Tramadol as treatment. Getachew Decl. ECF No. 6-5 ¶¶ 4-5; Medical Records ECF No. 4 at 2-6, 8, 25. However, neither Neurontin or Tramadol are medically indicated for long-term chronic pain management. Getachew Decl. ECF No. 6-5 ¶ 15.[5]

Further, the Department of Public Safety and Correctional Services (DPSCS) has identified Neurontin and Tramadol as medications "with patterns of overuse and abuse" and has sought to eliminate their use for non-Federal Drug Administration (FDA) approved conditions unless exceptional circumstances exist. Getachew Decl. ECF No. 6-5 ¶¶ 6, 7. Such abusive and

---

[5] Neurontin is approved by the FDA as an anticonvulsant for seizures and to treat neuropathic nerve pain caused by a herpes virus or herpes zoster (shingles). Neurontin is not FDA approved for Plaintiff's conditions. Getachew Decl. ECF No. 6-5 ¶ 7. Tramadol is a synthetic opioid generally not prescribed for long-term use because it may be habit forming and lead to addiction, abuse, and misuse. Getachew Decl. ECF No. 6-5 ¶ 8. "Recent medical studies have shown Tramadol to work no better than placebos and much worse than other available narcotics." Getachew Decl. ECF No. 6-5 ¶ 8. The Center for Disease Control recommends non-pharmacologic therapies and restricting the use of opioids in chronic pain treatment. Getachew Decl. ECF No. 6-5 ¶ 9.

potentially dangerous practices by inmates include hoarding medications for improper use or trading them to other inmates for misuse. Getachew Decl. ECF No. 6-5 ¶ 6. The DPSCS recommends that prescriptions for such medications be limited to 14-day periods. ECF No. 6-4 at 64. The prescription may be extended only after review and approval from a multidisciplinary pain management team. ECF No. 6-4 at 64.

As of August 2017, Horton was taking Neurontin (800 mg. twice daily) and Tramadol ER (200 mg. twice daily), and Tramadol (50 mg. at night). ECF No. 6-4 at 2, 4-5. On October 6, 2017, Horton complained of pins and needles in his feet. He was kept on the Tramadol at night and Tramadol ER and was prescribed insoles which Horton says he never received. ECF Nos. 6-4 at 8, 10; 8 at 3. Four days later, the medical director denied the request to renew Horton's Tramadol prescription for the evening and instead approved a tapering dose. Horton was taking 27 different medications at the time, prompting concern from the medical staff who called an inter-disciplinary team meeting to discuss Horton's treatment plan. ECF No. 6-4 at 14, 17-18, 22, 24.

On November 1, 2017, Dr. Getachew approved tapering Plaintiff's Neurontin and increased the prescribed dosage of Elavil. ECF No. 6-4 at 24. On November 6, 2017, the medical team, who included Ava Joubert-Curtis, M.D., Karen Brown, RN, Naa Odifie, Pharm. D., and representatives from the correctional case management staff, met to discuss Horton's long-term use of Tramadol ER. ECF No. 6-4 at 2-5. Horton was invited to the meeting but declined to attend. The meeting participants noted that Horton had declined surgery for his back and that his self-medication resulted in overuse of NSAIDs (nonsteroidal anti-inflammatory drugs) which caused kidney problems. The team also reviewed Horton's history of substance abuse, and ultimately determined that maintaining Horton on his current pain medication would be medically imprudent. ECF No. 6-4 at 25. The team recommended physical therapy with self-management,

tapering Neurontin, and possible decrease in his Elavil dosage. ECF No. 6-4 at 25. The team also approved a CT scan of Horton's abdomen because of his history of colonic polyps and blood in the stool and considered an MRI of his lower back. ECF No. 6-4 at 25. Horton thereafter refused to meet with medical personnel to discuss the treatment plan and instead signed a Release of Responsibility (ROR) form. ECF No. 6-4 at 25.

In November and early December, Horton complained of pain in his feet and legs and requested Tramadol ER which was prescribed. ECF No. 6-4 at 29. On December 12, 2017, x-rays were taken of Horton's spine and showed no evidence of acute fracture, dislocation, or acute bone abnormality. ECF No. 6-4 at 35. On January 12, 2018, Dr. Getachew denied the request to renew Horton's prescription for Tramadol, noting Horton's normal spine x-ray. ECF No. 6-4 at 36, 40. Dr. Getachew directed the medical staff to discuss with him any further desires to prescribe such medication due to its increased risks of addiction.

Horton complained in January about the continued burning in his feet and requested Tramadol again. ECF No. 6-4 at 41. In response, Nurse Practitioner Mahler confirmed with a physician that Horton would be placed on a Tramadol taper, begin physical therapy, and receive Tylenol 500 mg and an increased Horton's dosage of Elavil. She discussed prescribing Cymbalta, Tegretol, or Effexor, but Horton was not interested in any of those medications. ECF No. 6-4 at 41-44.

On January 25, 2018, Dr. Getachew saw Horton via telemed conference in response to Horton's complaints of chronic lower back pain radiating to his right leg. Horton discussed with the doctor his chronic back and leg pain since his injury in the Army. Horton requested to remain on the same medication regimen. Dr. Getachew noted that Horton had no morning stiffness, leg weakness, bladder or bowel incontinence. Horton's physical examination and x-ray provided no

5

underlying cause for the chronic pain. Getachew determined that although Horton complains of chronic back pain for which only narcotics will alleviate, Horton also does not have any progressive neurological deficit or specific underlying cause for the pain. Getachew therefore recommended physical therapy and a psychiatry consult for his anxiety disorder. Getachew concluded that in his medical opinion, treatment with narcotics is not medically indicated. ECF No. 6-4 at 47-49.

On March 1, 2018, Horton received approval for a physical therapy assessment but he refused to attend. ECF No. 6-4 at 51. Instead, Horton continued to complain of back pain and asked for Neurontin and Tramadol. ECF No. 6-4 at 52, 55, 68. On March 10, 2018, Physician's Assistant Matthew Carpenter prescribed Neurontin 800 mg. twice daily. ECF No. 6-4 at 55, 58-59. Horton at that meeting also agreed to begin physical therapy. ECF No. 6-4 at 55. Dr. Getachew, however, denied the Neurontin prescription, noting Horton's history of depression and current prescription for Zoloft.

On March 24, 2018, Horton met with Nurse McLaughlin for complaints of back pain and numbness in his heels and again asked for Neurontin. McLaughlin offered to prescribe Cymbalta which Plaintiff refused because he did not like the side effects. McLaughlin indicated that she would recommend prescribing Tramadol but noted the possibility that the prescription would be denied. Plaintiff also reported that physical therapy worsened his pain. ECF No. 6-4 at 60, 62-63.

On April 3, 2018, Dr. Getachew met with Plaintiff by telemed conference to review Horton's pain concerns. In advance of this appointment, Horton's medical file indicates that a prison pharmacist noted that Horton's extended use of Tramadol since November 2015 was not medically indicated and suggested drug seeking behavior.[6] The pharmacist recommended a short,

---

[6] Dr. Getachew agrees with the pharmacist, opining that neither Neurontin or Tramadol are medically indicated for the long-term management of chronic pain. Getachew Decl. ECF No. 6-5 ¶ 15. As to Horton's contention that

6

14-day prescription for Tramadol 50mg ER and Tylenol thereafter for pain. ECF No. 6-4 at 64. At the telemed visit, Horton "was belligerent and requested that I put him back on Tramadol" and threatened to sue. ECF No. 6-4 at 66. Getachew requested a follow-up team meeting. ECF No. 6-4 at 66.

On April 22, 2018, Horton once again complained of lower back and radiating pain to his left foot and reported he had trouble sleeping on the affected side. Nurse Practitioner Janette Clark noted that Plaintiff did not limp when entering the medical room, leaned deeply on his cane when exiting the exam, was able to get off the exam table without difficulty, and was able to conduct activities of daily living unaffected by his reported pain. Horton disagreed with the pain management plan and requested renewal of his Elavil prescription. Because Horton complained his mouth was dry, a possible side effect of Elavil, Clark renewed the medication at a lower dosage. ECF No. 6-4 at 68-69.

On June 1, 2018, Horton complained of chronic lower back pain to Matthew Carpenter, PA, who requested Neurontin 600 mg twice daily for Horton. Dr. Getachew denied the request, recommending Nortriptyline or Desipramine instead. ECF No. 68-4 at 74, 76.

## II. Standard of Review

Defendants have submitted evidence beyond the four corners of the Complaint, and requested that this Court treat the motions as ones for summary judgment. Fed. R. Civ. P. 12(d). Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment shall be granted if the movant demonstrates that no genuine dispute as to any material fact exists, and the movant is entitled to judgment as a matter of law. "[T]he mere existence of *some* alleged factual dispute

---

Ultram alleviates his pain, Getachew's medical view is that this too may suggest drug seeking behavior, and that long-term narcotic administration is not medically appropriate to treat Horton. Getachew Decl. ECF No. 6-5 ¶¶ 14-15; see also ECF No. 6-4 at 64.

between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247-48 (1986) (emphasis in original). "The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.,* 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The Court should "view the evidence in the light most favorable to . . . the nonmovant[] and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002). The Court must, however, "prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat,* 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

**III.    Discussion**

**A.    Claims against Dr. Getachew**

Horton's contends, at bottom, that Dr. Getachew's decision to reduce or deny Horton his choice in medication amounts to cruel and unusual punishment in violation of the Eighth Amendment.  *See Gregg v. Georgia*, 428 U.S. 153, 173 (1976).  "Scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment." *De'Lonta v. Angelone,* 330 F.3d 630, 633 (4th Cir. 2003) (citing *Wilson v. Seiter*, 501 U.S. 294, 297 (1991) ); *accord Anderson v. Kingsley*, 877 F.3d 539, 543 (4th Cir. 2017).  An Eighth Amendment violation for inadequate medical care shall lie where the plaintiff shows that defendants acted or failed to act with deliberate indifference to plaintiff's serious medical need.

8

*See Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *see also Anderson*, 877 F.3d at 543. To sustain this claim, plaintiff must demonstrate that (1) objectively, he was suffering from a serious medical need; and (2) subjectively, the defendants were aware of his need for medical attention but failed to either provide it or ensure that it was available. *See Farmer v. Brennan*, 511 U.S. 825, 834–7 (1994); *see also Heyer v. U.S. Bureau of Prisons*, 849 F.3d 202, 209–10 (4th Cir. 2017).

It is undisputed that Horton was suffering from a serious medical need. As to the subjective element, a plaintiff must show the defendant to "have both 'subjectively recognized a substantial risk of harm' and 'subjectively recognized that his[/her] actions were inappropriate in light of that risk.'" *Anderson*, 877 F.3d at 545 (quoting *Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004)); *see also Rich v. Bruce*, 129 F.3d 336, 340 n. 2 (4th Cir. 1997) ("True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk."). If the requisite subjective knowledge is established, an official may avoid liability "if [he] responded reasonably to the risk, even if the harm ultimately was not averted." *See Farmer*, 511 U.S. at 844.

Importantly, "many acts or omissions that would constitute medical malpractice will not rise to the level of deliberate indifference." *Jackson*, 775 F.3d at 178. Deliberate indifference amounts to "more than mere negligence, but less than acts or omissions done for the very purpose of causing harm or with knowledge that harm will result." *Scinto v. Stansberry*, 841 F.3d 219, 225 (4th Cir. 2016) (citation and internal quotation marks omitted). Claims of medical negligence or disputed questions of medical judgment are not cognizable as constitutional violations. *See Russell v. Sheffer*, 528 F.2d 318, 319 (4th Cir. 1975) (stating questions of medical judgment are not subject to judicial review). Nor is a mere disagreement between an inmate and a physician over the appropriate level of care. *See Estelle v. Gamble,* 429 U.S. 97, 106 (1976); *Wright v. Collins,* 766

9

F.2d 841, 849 (4th Cir. 1985) (citing *Gittlemacker v. Prasse,* 428 F.2d 1, 6 (3rd Cir. 1970)); *see also Scinto*, 841 F.3d at 225.

Viewing the evidence most favorably to Horton, he has undoubtedly disagreed with Dr. Getachew and other medical providers about the proper medication to treat his chronic pain. Notably, however, Horton does not dispute the medically sound reasons for implementing the change – that long term use of such medications for his condition is not medically indicated or FDA approved. Horton also does not marshal any evidence challenging Dr. Getachew's decisions, along with the larger medical team, to change Horton's medication regimen in light of Horton's medical history, physical examination, and x-ray results. Horton was presented with medical alternatives (which he declined) and was invited to the medical team planning sessions (which he also declined). Accordingly, no evidence exists that acts were undertaken "for the very purpose of causing harm or with knowledge that harm will result," *Farmer*, 511 U.S. at 835, or with callous disregard for Horton's serious pain needs. Summary judgment is granted in Dr. Getachew's favor as to these claims.

**B.     Claims against Warden Graham**

Horton's primary complaint against Graham is that Graham failed to respond to his medical complaints as described in the ARP. As the Warden, Graham does not have any direct or indirect control over the provision of medical care to Horton. Because the doctrine of respondeat superior does not apply to § 1983 claims, *Trulock v. Freeh,* 275 F.3d 391, 402 (4th Cir. 2001), Graham cannot be responsible merely for occupying the position of Warden at the time Horton was allegedly mistreated. *See Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004). Graham defers to the expertise of medical staff regarding the medical care and treatment of inmates. Graham Aff., ECF No. 15-2 ¶ 3. When responding to inmate complaints about medical care, Graham and

the correctional staff rely on reports, assessments and judgments of trained medical staff. Graham Aff., ECF No. 15-2 ¶¶ 2, 4. No evidence exists that Graham provided any medical care, and at most, could be said to have conveyed to medical providers Horton's pain management concerns. Because Graham did not participate in Horton's medical care, Horton's Eighth Amendment claims as to Graham must fail.

**C.     Claims against Wexford Health Sources, Inc.**

Similarly, Wexford, a private corporation that contractually provided health care to Maryland inmates, is not alleged to have undertaken any specific constitutional violations. Nor has Horton alleged any facts that Wexford is liable pursuant to an unconstitutional pattern or practice or official policy or custom. *See Monell v. Department of Social Serv's of the City of New York*, 436 U.S. 658, 690–91 (1978). Accordingly, summary judgment is granted in Wexford's favor.

**D.     Remaining State Law Claims**

To the extent Plaintiff intended to raise state common law claims of negligence or medical malpractice as to the Medical Defendants, the Court declines to exercise supplemental jurisdiction over those claims. "When, as here, the federal claim is dismissed early in the case, the federal courts are inclined to dismiss the state law claims without prejudice rather than retain supplemental jurisdiction." *Carnegie Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988) (citing *United Mine Workers of America v. Gibbs,* 383 U.S. 715, 726-27 (1966)). The Court grants Horton's motion to remand the state law claims to Alleghany County District Court.

**IV.     Conclusion**

Based on the foregoing, the grants Defendants' Motions for Summary Judgment as to the constitutional claims and remands the state common law claims.  A separate Order follows.


   5/29/19                                                    /S/
Date                                              Paula Xinis
                                                  United States District Judge